UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MAURICE COLLINS,

        Plaintiff,

v.                                    Case No. 17-C-1157

AMY GUNDERSON and
GWENDOLYN A. VICK,

        Defendants.

# FINDINGS OF FACT AND CONCLUSIONS OF LAW
# AND DECISION GRANTING MOTION FOR SANCTIONS

Plaintiff Maurice Collins, an inmate serving a state sentence at Wisconsin Secure Program Facility (WSPF), brought this action pursuant to 42 U.S.C. § 1983 against Defendants Amy Gunderson and Gwendolyn Vick, alleging that they were deliberately indifferent to his stated intent to harm himself by ingesting the medication health services staff allowed him to keep in his cell while incarcerated at Waupun Correctional Institution (WCI). On March 9, 2018, the defendants filed a motion to dismiss as a sanction, asserting that Collins filed a fabricated health services request response from defendant Vick in an attempt to defraud the defendants and the court. The court held an evidentiary hearing on the defendants' motion on June 27, 2018. As explained more fully below, based on the evidence presented, I find by clear and convincing evidence that Collins filed a fraudulent health services request and then lied about it under oath and will grant the defendants' motion.

## BACKGROUND

The health services request that is the subject of the defendants' motion was purportedly submitted to the Health Services Unit (HSU) by Collins on February 24, 2016, in which he wrote:

> To [D]r. Halper, Callister & Manlove, I am writing you because I don't feel safe with these meds in my cell & I am feeling suicidal. I have pleaded with you to place me on crushed meds cuz (sic) I couldn't have meds in my possession!

Ex. 1010 at 59. The request appears to be signed by Gwendolyn A. Vick RN on February 25, 2016, and shows that she checked the box marked "refer to PSU." *Id.*

By way of background, this request was for HSU to reinstate the crushed medication order for Collins that had been discontinued in early-February 2016 as a consequence of Collins' inappropriate behavior, including his acts of exposing himself to nurses during the medication delivery. Once his crushed medication order had been discontinued, HSU authorized Collins to keep non-controlled medications, such as Tylenol, in his cell to take at his discretion. This type of medication may be prescribed by HSU to inmates in general population and is also available in canteen for purchase. Collins testified that he wanted to receive his medication crushed because he is then unable to hoard pills and later overdose on them.

Collins alleges in his complaint that he did not receive a response from HSU regarding his February 24, 2016 request and subsequently overdosed on the Tylenol and Naproxen in his cell on February 25, 2016, resulting in outpatient treatment at Waupun Memorial Hospital. The defendants contend that Collins did not submit the February 24, 2016 health services request to HSU on that date, but falsified the document by forging Vick's signature, dating her receipt of the request as February 25, 2016, and then placing the document in his medical file after the overdose. In other words, the defendants claim Collins manufactured evidence in an attempt to defraud both them and the court.

**FINDINGS OF FACT**

The court finds by clear and convincing evidence that Collins filed a false and fraudulent health services request with the court and further lied about his conduct in an attempt to avoid the consequences of his actions. I base this finding on the testimony of Gwendolyn Vick, whom I found to be a credible witness. Vick testified that she never received or signed Collins' February 24, 2016 health services request. She stated that the signature on that request is not her own and explained that it was written more carefully than her usual "scrawl." As further evidence of falsification, Vick asserted that she date-stamps the health services requests she receives and noted that the health services request at issue here is not date-stamped. *Compare* Ex. 1010 at 63–66, *with* Ex. 1010 at 59. But most importantly, Vick testified that she could not have received or signed the health services request on February 24 and 25 because she was on vacation the entire week of February 22 through February 26, 2016.

Vick's testimony was corroborated by the testimony of Chrystal Marchant, the Health Services Unit Manager at WCI. Marchant, whom I also found to be a credible witness, testified that Vick was not scheduled to work the week of February 22 through February 26, 2016 and did not work during that time. The documentary evidence submitted by the defendants, namely Vick's time sheet, shows that Vick did, in fact, take paid vacation for that week and confirms that she did not work on February 25, 2016. Ex. 1011.

Collins argues that Vick is not credible because she amended her responses to his first set of interrogatories. He contends that in Vick's initial responses, she stated that she reviewed his request and forwarded his concerns to the appropriate staff for response, but later amended her responses to assert that she did not work on February 24 or 25. *Compare* Ex. 1008, at ¶ 4, *with* Ex. 1009.

3

Her contradictory responses, Collins maintains, show that her testimony should not be believed. Yet, Vick explained why she needed to amend her responses to Collins' interrogatories. She testified that at the time she completed her initial responses, she was not able to review Collins' medical file and did not have all of the documents available to her, including the health services request at issue. Once she saw the health services request, she reviewed her time sheet and realized that she did not work the week of February 22, 2016 and did not sign the request on February 25. She then amended her responses accordingly.

Vick's testimony is persuasive and convincing. I find that when Vick completed her initial responses, she did not intentionally make false statements about these events. At the time she drafted her responses, she believed the information she provided to be true and assumed that Collins was truthful in asserting that he had submitted the request in the first place. It was only after she reviewed the health services request and her time sheet that Vick realized she was not working on those days and could not have received or processed the health services request. In addition, much of Vick's initial responses to the interrogatories explained WCI's procedure for processing health services requests generally. That is, Vick never stated that she followed these procedures in Collins' case specifically. Based on the evidence and testimony presented, I am satisfied that Vick did not work February 22, 2016 through February 26, 2016 and did not receive, sign, or process, the February 24, 2016 health services request.

The defendants assert that Collins forged the health services request at issue and then put the document in his medical file. They suggest that Collins had the opportunity to place a forged request in his file during a review of his medical records. At the evidentiary hearing, Marchant described the medical file review process. She explained that after an inmate requests to review his medical

4

record, he is brought to a "visiting room." A Medical Program Assistant Associate (MPAA) supervises the visiting room while up to four inmates review their records at one time. Marchant explained that in her experience, inmates have placed forged documents into their medical files during record reviews when the MPAA is distracted by another inmate's questions. She testified that it is possible for an inmate to slip a health services request into his medical file because these forms are not bound together with the inmate's chart and are simply loose in a manilla folder that is maintained within the file. Marchant testified that Collins had medical record reviews on April 4, 2016 and May 17, 2016 during which he could have inserted the falsified document into the manilla folder in his file. *See* Exhibit 1010 at 8. Jolinda Waterman, the WSPF Health Services Manager, testified that, after his transfer to that institution, Collins reviewed his medical file, which was transferred along with him, on June 29, 2016; July 28, 2016; August 4, 2016; and October 12, 2016. She explained that, during a medical file review at WSPF, up to four inmates may review their files in HSU under the supervision of one HSU officer. According to Waterman, inmates at this facility have also placed forged documents into their files during record reviews.

Collins challenges the defendants' assertion that he had occasion to put a falsified document in his medical file. He claims inmates are subject to a thorough search for contraband before leaving their cells and are searched before entering HSU. Pl.'s Resp. to Defs.' Mot. to Dismiss at 1–2, ECF No. 31. At the evidentiary hearing, Collins testified that no nurse present during the time of his file reviews submitted a declaration identifying the number of inmates in HSU at the time Collins reviewed his medical records or stating that she had been distracted by other inmates, making it possible for Collins to slip a falsified document into his file. *Id.* Marchant and Waterman stated that there have not been any reports that an HSU member has witnessed Collins putting a document into

5

his medical file. But the fact that no HSU staff member has caught Collins in the act does not rebut the defendants' evidence that he fabricated the February 24, 2016 request and had the opportunity to place it in his file.

Further evidence supporting the defendants' claim that Collins inserted the February 24, 2016 health services request into his medical file sometime later is the fact that Collins did not rely on the request when complaining about the defendants' deliberate indifference through WCI's internal grievance system. For instance, on February 28, 2016, Collins submitted Grievance No. WCI-2016-4633, alleging that he wrote to HSU on February 21, 2016 asking to be put on crushed medication because he was having suicidal thoughts and stating that he ultimately overdosed on his medication on February 25, 2016. He noted that the date of the incident or denial of the request was February 23, 2016, the date Nurse Gunderson responded to the request. Ex. 1007 at 14–15. In support of his grievance, he attached the February 21, 2016 health services request containing Nurse Gunderson's response. He did not, however, mention or enclose the February 24 health services request. *Id.* at 15. Collins filed a second grievance on February 29, 2016, Grievance No. WCI-2016-4632, noting that he wrote to PSU requesting to be placed back on crushed medication. Ex. 1006 at 12. He indicated that the date of the incident or denial of the request was February 23, 2016, the date Halper responded and advised him that PSU decided to change his crushed medication restriction due to his inappropriate behavior. In support of his grievance, he attached the February 21, 2016 psychological service request. *Id.* at 13. Again, this grievance did not reference the February 24 health services request or Vick's February 25 response to it. Indeed, nothing in the record suggests that Collins referred to this request in any WCI grievance or appeal.

6

Instead, Collins first referenced the February 24, 2016 request in support of the motion for summary judgment he filed in a lawsuit in the Eastern District of Wisconsin. *See Collins v. Callister*, No. 16-CV-1151-PP (E.D. Wis.); Ex. 1001. In that case, Collins filed a lawsuit against Todd Callister, Bonnie Halper, and Jeffrey Manlove, various WCI psychological services staff members, based on the events surrounding the February 25, 2016 overdose. Ex. 1000. Just as in this case, Collins asserted that the defendants were deliberately indifferent to the risk that he would overdose on the medications in his cell when they failed to grant his request for crushed medication. Notably, Vick was not a defendant in this action. On May 15, 2017, Judge Pamela Pepper issued a decision and order denying Collins' motion for summary judgment, granting the defendants' motion for summary judgment, and dismissing the case. Judge Pepper concluded that no jury could reasonably conclude that Manlove and Callister were deliberately indifferent because Collins did not present any evidence that these defendants received a single request from Collins to be placed back on crushed medication, including the February 24, 2016 request. She also found that Halper was not deliberately indifferent because, even though she had received Collins' requests to be placed on crushed medications, there was no evidence that she received the February 24, 2016 request alerting the defendants to the fact that HSU allowed him to possess his medication in his cell. In other words, the fact that the defendants had no knowledge of Collins' request or that he had control over all of his medications, coupled with the fact that Collins had not brought the lawsuit against an individual who would have seen the request, was fatal to his claim. After Collins' claims were ultimately dismissed, he filed the instant action against the defendants in this case.

Finally, I note that Collins, more than any other individual, had strong motive to manufacture the health services request and then to lie about it. He certainly had the most to gain from the

7

forgery's success, as the health services request would support and bolster his deliberate indifference claims in both the past case and the current one. I also find that he had the opportunity to place a forged document in the manilla folder in his medical file during a record review. Based on the record before me, I am persuaded that Collins never submitted a health services request to HSU on February 24, 2016 and instead falsified this request in an attempt to support his claims. The court must now determine the appropriate sanction for Collins' misconduct.

## REMEDY

The court has the inherent power to sanction a party's misconduct. *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 739 (7th Cir. 2009). "Sanctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Id*. "A litigant's misconduct can justify default judgment . . . and perjury is among the worst kinds of misconduct." *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)). "Perjury committed in the course of legal proceedings is a fraud on the court, and it is arguable that a litigant who defrauds the court should not be permitted to continue to press his case." *Allen v. Chi. Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003); *see also Jackson v. Murphy*, 468 F. App'x 616, 620 (7th Cir. 2012) (finding sanction of dismissal was "entirely warranted" where plaintiff perjured himself and forged a critical document to support his case). The court finds that Collins fabricated allegations and evidence in this case. Although dismissal with prejudice is an extreme sanction, the court finds it is warranted here.

While the court must consider whether lesser sanctions would be appropriate before dismissing a case, I conclude that such sanctions would not be proper or effective here. As an initial

8

matter, though a fine is ordinarily an appropriate lesser sanction, "[m]onetary sanctions are generally not as effective against a pro se plaintiff proceeding as a pauper." *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011). In addition, merely excluding the fabricated health services request and any allegations related to it may not effectively deter Collins or other prisoners from engaging in similar conduct in future cases. Manufacturing evidence undermines the essential truth-finding function of the justice system, puts the system through unnecessary work, and causes the defendants unnecessary expense and delay. *Rivera*, 767 F.3d at 686. In this case, three correctional officers were required to escort Collins to the hearing and an assistant attorney general for the Wisconsin Department of Justice, a paralegal, a nurse, and two health services managers were required to devote time and effort in defending against his manufactured claim. Collins' conduct is inexcusable and will not be tolerated. While this is reason enough to dismiss Collins' case with prejudice, I have also considered the merits of his claim.

Collins' claim is predicated on the principle adopted by the Supreme Court in *Estelle v. Gamble* that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976). This principle derives from the fact that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* at 103; *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The principle appears to have evolved, however, into the rule that prison staff must protect an inmate from the inmate's own efforts to injure himself. While prison staff are under an obligation to protect inmates from self-harm, the official must know that a risk of future harm is "'sure or very likely' to give rise to 'sufficiently imminent dangers' before [she] can be liable for ignoring that risk." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir.

9

2018) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion)). Without the manufactured health services request, which would be the only source of information from which Vick could infer that a substantial risk of serious harm existed, his claim surely fails. The court further notes that Collins' damages are minimal—Collins testified that, as a result of the overdose, he had chest pain, stomach pain, headaches, and nausea that lasted for a couple days. Although he was taken to the local hospital, his medical bills were paid by the state and, of course, as a prisoner serving a sentence, he had no wage loss. This is not a case in which dismissal will result in the loss of a meritorious and substantial claim. In sum, Collins' conduct in fabricating evidence in an effort to create a cause of action out of whole cloth, subvert justice, and defraud the defendants demonstrates that he has no respect for the integrity of the judicial process. For these reasons, the court concludes that the only reasonable sanction to ensure that Collins does not trample on the integrity of the court any further is dismissal with prejudice.

Sections 1915(e)(2) and 1915A also require that the court dismiss a complaint at any time it determines that the complaint is malicious. 28 U.S.C. §§ 1915(e)(2); 1915A. It is hard to conceive of misconduct more malicious than fabricating allegations and evidence. Collins has manufactured evidence to defraud the court, the defendants, and ultimately, the taxpayers of the State of Wisconsin. His fraudulent behavior has resulted in the court diverting significant time and resources from legitimate cases awaiting judicial attention. In addition, his misconduct has introduced stress and anxiety into the lives of people who did nothing more than try to perform their duty to care for him. As such, the court finds that Collins must also be assessed a strike under 28 U.S.C. § 1915(g). *See Goodvine v. Vandewalle*, No. 16-C-890, 2018 WL 460121 (E.D. Wis. Jan. 23, 2018); *Carter v. Waterman*, No. 14-cv-399, 2016 WL 407331 (W.D. Wis. Feb. 2, 2016); *Lindsey v. Brown*, Case No. 13-cv-68, 2013 WL 5148347 (S.D. Ind. Sept. 11, 2013).

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss (ECF No. 25) is **GRANTED**. Collins is assessed a strike under 28 U.S.C. § 1915(g). The Clerk is directed to enter judgment of dismissal forthwith. Finally, a copy of this decision will be sent to the United States Attorney, who may wish to prosecute Collins for the crime of perjury. *See Rivera*, 767 F.3d at 687 (citing 18 U.S.C. § 1621).

**SO ORDERED** this  29th  day of June, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

---

This order and the judgment to follow are final. The plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If the plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If the plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.